AMY HUTCHISON CRELLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AMY HUTCHISON CRELLIN TRUST, PASADENA METHODIST FOUNDATION, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 106839, 109669. Promulgated May 13, 1942.

*Maynard J. Toll, Esq.*, for the petitioners.
*Harry R. Horrow, Esq.*, for the respondent.

# 1154

OPINION.

STERNHAGEN: 1. The question in both cases is whether the Crellin trust is within the provisions of sections 1004 (a) (2) (B) and 101 (6), Internal Revenue Code.[1] If it is within the former, the gift of Mrs. Crellin to it is a deduction in determining her gift tax; if it is within the latter, the trust is exempt from income tax.

---

[1] SEC. 1004. DEDUCTIONS.

In computing net gifts for the calendar year 1939 and preceding calendar years, there shall be allowed (except as otherwise provided in paragraph (1) of subsection (a)) such deductions as are provided for under the gift tax laws applicable to the years in which the gifts were made.

SEC. 505. (a) (2) (B), Revenue Act of 1932, as amended by sec. 517 (a), Revenue Act of 1934:

In computing net gifts for any calendar year there shall be allowed as deductions:

(a) RESIDENTS.—In the case of a citizen or resident—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(2) CHARITABLE, ETC., GIFTS.—The amount of all gifts made during such year to or for the use of—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(B) A corporation, or trust, or community chest, fund or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private shareholder or individual and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;

The approach to the question involves the emphasis to be placed upon one or the other of the coordinate subdivisions A and B, paragraph eighth, of the trust instrument. If the trust had designated as beneficiaries only those stated in subdivision B, the statutory exemption would hardly be doubtful. Such a trust would be a means of providing for education, without personal specification or identification, of the young people of a church of the community, and this would be enough to establish the charitable character of the trust. *In re Henderson's Estate*, 112 Pac. (2d) 605; *In re Willey's Estate*, 128 Cal. 1; 60 Pac. 471. On the other hand, if the trust had designated only the fourteen enumerated in subdivision A, it would not be a public charitable trust but a private means of educating the named relatives of the settlor. *Henry C. DuBois*, 31 B. T. A. 239; *James Sprunt Benevolent Trust*, 20 B. T. A. 19. But the inclusion of both these divergent provisions in the same trust presents a different question.

There is no doubt that the trust was created for a beneficent purpose, which is expressed in the opening paragraph of eighth. But this alone is not determinative, since it affects equally both divergent subdivisions. Clearly if the opening paragraph of eighth were followed only by a list of three persons who were the children of the settlor, it would not serve to give a charitable character to the trust.

The fact is that two separate and dissimilar groups of beneficiaries are set forth in subdivisions A and B. Those in subdivision A are fourteen named persons, and no descriptions or common attributes are set forth. Evidence *dehors* the instrument shows that these persons are among the seventeen grandnephews and grandnieces of the settlor, that they are not members of the First Methodist Church of Pasadena and are not residents of that vicinity. Subdivision B designates an entirely different class of beneficiaries, namely, young people who are members of the First Methodist Church. The fourteen relatives named in subdivision A are not within a general class of beneficiaries, and do not present an instance within the doctrine that a trust for a general class is none the less a charitable trust if it provides for a preference to certain members of the class. Cf. *Schoellkopf v. United States*, 124 Fed. (2d) 982.

Instead of being favored beneficiaries of a more general class, the nominees in group A are the particular persons for whom the trust was primarily created. In the instrument itself they are the first

SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS [as amended by § 217, 1939 Act.].

The following organizations shall be exempt from taxation under this chapter—

\* \* \* \* \* \*

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific. literary, or educational purposes, or for the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

named, and, if their educational demands are sufficient, they may exhaust the fund. While it does not seem likely that the demand will be great enough to have such a result, nevertheless the settlor intended that the fourteen should be provided for even though the fund should thus be exhausted and nothing be left for the young people of the church. Behind the instrument, the evidence shows that the trust was born of the settlor's desire to provide education for her fourteen grandnephews and grandnieces, and this strengthens the inference as to intention which is drawn from the instrument itself. Only the excess of the fund is to be devoted to the education of young people of the church; and in view of the amount of the fund and the number of primary beneficiaries, it is apparent that the aid provided for the church members is incidental to the main object of the trust.

For this reason, it can not be said that the trust is a public charitable trust; the exemption is defeated by the specific enumeration of the settlor's grandnephews and grandnieces as the individual beneficiaries. *Cap Andrew Tilles*, 38 B. T. A. 545; affirmed other point, 113 Fed. (2d) 907, certiorari denied, 311 U. S. 703. For the same reason, it does not help petitioner that the purpose of the trust is entirely educational.

But if the question be approached from the opposite view, and the trust be regarded as predominantly one for the benefit of young people of the First Methodist Church, it would still be necessary to hold that this was not the exclusive purpose for which it was organized and operated. The private beneficence to the enumerated fourteen relatives was not a mere incident of a larger public charity. Subdivision A and its operation are a major part of the trust. While this may be essentially a question of degree, a trust for the benefit of thousands of persons in a class not perhaps losing its character if it also benefited fourteen of the settlor's relatives, the degree in the present case is relatively too great to be ignored.[2]

This is a commendable trust, actuated by the highest motives. It was not impelled by any thought of reducing taxes through a factitious deduction. If it had been, the instrument would have been drawn quite differently. The instrument was obviously drawn to effectuate the settlor's purpose primarily to provide her grandnephews and grandnieces with the means of a college education which otherwise they might not be able to procure. This purpose, no matter how commendable, is not the charitable purpose which permits a deduction for gift tax or an exemption to the trust.

2. Mrs. Crellin, believing herself entitled to a deduction under section 1004 (a) (2) (B), Internal Revenue Code, took no deduction

---

[2] Restatement of the Law, Trusts, ch. 11; Scott on Trusts, ch. 11; Paul, Federal Estate and Gift Taxation, ch. 12.

under section 505 (a) (1), Revenue Act of 1932, as amended by section 301 (1) (b), Revenue Act of 1935,[3] of any part of the specific deduction of $40,000. She now claims the right to such deduction. We see no ground upon which the deduction can be denied. The statute gave petitioner the right to use up as much of the $40,000 exemption as her gift would absorb. In mandatory language it provides that to this extent the exemption shall be allowed as a deduction. In any year the allowance is only limited to the remainder left after the amounts of previous years' exemptions have been charged against the total of $40,000. As to the amount, no question is raised. The fact that the taxpayer, in a mistaken view of the law, has omitted to avail herself of the exemption is not an election which operates to deprive her of the exemption when her mistake is disclosed. *Richardson* v. *Commissioner*, 126 Fed. (2d) 562.

In Docket 106839 it is held that, although petitioner is not entitled to a deduction under section 1004 (a) (2) (B), Internal Revenue Code, she is entitled to a deduction under the specific exemption, and there is no deficiency. In Docket 109669, it is held that petitioner is not within section 101 (6), Internal Revenue Code, and is therefore not exempt. *Decision will be entered under Rule 50.*

---

[3] SEC. 505. DEDUCTIONS.

In computing net gifts for any calendar year there shall be allowed as deductions:
(a) RESIDENTS.—In the case of a citizen or resident—
(1) SPECIFIC EXEMPTION.—An exemption of $40,000 less the aggregate of the amounts claimed and allowed as specific exemption for preceding calendar years.