Carolyn Trippe v. Commissioner.
Trippe v. Commissioner
Docket No. 22116.
United States Tax Court
1950 Tax Ct. Memo LEXIS 135; 9 T.C.M. (CCH) 622; T.C.M. (RIA) 50176; July 25, 1950
*135 Bert Winters, Esq., West Palm Beach, Fla., for the petitioner. Frank M. Thompson, Jr., Esq., for the respondent. TURNER Memorandum Opinion TURNER, Judge: The respondent determined a deficiency in the petitioner's income tax for the calendar year 1945 in the amount of $2,741.90. The only issue is whether petitioner is entitled to a deduction of $3,878.89 as a charitable deduction within section 23 (o)(2) of the Internal Revenue Code. The facts have been stipulated and are found accordingly. The petitioner is a resident of Palm Beach, Florida. She filed her 1945 return with the collector of internal revenue for the district of Florida, Jacksonville division. The disputed deduction was an expense incurred by petitioner for the maintenance of a dwelling house in Palm Beach, Florida, for housing and entertaining United States and British soldiers and cadets while they were on leave or furlough. The charitable activities, of which this was a part, began when Mrs. Ida NeSmith, a resident of Palm Beach, started to have a few of the servicemen in for tea on Saturday afternoons. Soon so many servicemen were accepting this hospitality that Mrs. NeSmith *136 could not adequately provide for them alone. Other ladies in the community became interested in Mrs. NeSmith's project and joined her in entertaining and providing refreshments for these servicemen. This group of ladies, headed by Mrs. NeSmith, expanded their activities and began taking these servicemen into their homes on weekends, giving them lodging and meals. They called on others in the Palm Beach area to make their homes available to these men on leave and furlough. Soon great numbers of these men were utilizing this additional hospitality, and this group of ladies found it very difficult to provide all the lodging necessary. In the spring of 1945 the petitioner, knowing of this work that was being carried on under the leadership of Mrs. NeSmith, offered to provide a house and staff it for the express purpose of providing food and lodging for these servicemen. She leased a certain property in Palm Beach for a term extending from May 1, 1945 to May 1, 1946. This she offered to Mrs. NeSmith, who used it for the purposes above described and it was commonly known as "Furlough House". Petitioner left a standing order with a local grocer by which all of the groceries used at "Furlough *137 House" could be charged to her account. She also bore the expense of wages for cleaning and upkeep, personnel, repairs, utilities and other ordinary expense. The total expense to petitioner involved in the operation of the house during 1945 was $3,868.89. The operation of "Furlough House" was just one phase of this group's activities. Petitioner was only one of many citizens and residents in the Palm Beach area who contributed to the work of this group. The operation of the house was not an individual operation directed and supported only by petitioner. It was a part and parcel of the activities of the group. There were no net earnings to inure to the benefit of anyone, and no part of these activities was for the purpose of carrying on propaganda or to influence legislation. The question is whether this expenditure can be held to be a charitable contribution within the meaning of section 23 (o) (2) of the Code. [1] The express language of this section requires that the donee be "a corporation, trust, or community chest, fund, or foundation" organized and operated exclusively as a charity. It contemplates an entity or association capable of taking, as well as one that must have *138 been, in its inception, organized exclusively for charitable purposes and in fact has operated as such. We think it clear that the "group of ladies" headed by Mrs. NeSmith was not "a corporation, trust, or community chest, fund, or foundation" as was contemplated by the statute. There was no agreement, either verbal or in writing, which set forth a regulatory framework of government or mode of operation. This joint effort on the part of Mrs. NeSmith, the petitioner, and the other participants in the Palm Beach area, although a worthy and beneficent operation, is not the organized charity contemplated by the Code. Not only is there here an absence of organization, there is no stated exclusive charitable purpose nor a showing that the operation was exclusively for charity. A charitable contribution to qualify as a section 23 (o) (2) deduction must be given to a donee that qualifies both for its exclusive charitable organization as well as operation. Cf. William T. Bruckner et al., 20 B.T.A. 419, 422, 423; Sun-Herald Corporation v. Duggan, 73 Fed. (2d) 298, 300. See also Amy Hutchison Crellin, 46 B.T.A. 1152. Deductions are matters of legislative *139 grace and the expenditures here claimed as a deduction do not meet the requirements of the statute. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. [In computing net income there shall be allowed as deductions:] (o) Charitable and Other Contributions. - In the case of any individual, contributions or gifts payment of which is made within the taxable year to or for the use of: * * *
(2) A corporation, trust, or community chest, fund, or foundation created or organized in the United States or in any possession thereof or under the law of the United States or any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.↩